IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| JOSEPH G. PIA, an individual,<br><br>    Plaintiff,<br><br>v.<br><br>SUPERNOVA MEDIA, INC., a New York corporation; JOYCELYN ENGLE a/k/a JOYCELYN DIPALMA, an individual; JOSEPH DIPALMA, an individual; JULIANNE MICHELLE, an individual; KELLY KENT, an individual; and Does 1-100,<br><br>    Defendants. | **MEMORANDUM DECISION AND ORDER GRANTING IN PART MOTION TO COMPEL FULL AND COMPLETE DEPOSITION TESTIMONY**<br><br>Case No. 2:09-CV-840 CW<br><br>District Judge Clark Waddoups<br><br>Magistrate Judge David Nuffer |
| SUPERNOVA MEDIA, INC., a New York corporation; JOYCELYN ENGLE a/k/a JOYCELYN DIPALMA, an individual; JOSEPH DIPALMA, an individual, and JULIANNE MICHELLE, an individual;<br><br>  Counterclaimants,<br>v.<br><br>JOSEPH G. PIA,<br><br>  Counterclaim Defendant. | |
| SUPERNOVA MEDIA, INC., a New York corporation; JOYCELYN ENGLE a/k/a JOYCELYN DIPALMA, an individual; JOSEPH DIPALMA, an individual, and JULIANNE MICHELLE, an individual,<br><br>    Third-Party Plaintiffs,<br>v.<br><br>BENNETT TUELLER JOHNSON & DEERE, LLC, a Utah limited liability company; and STUCKI STEELE PIA ANDERSON & RENCHER, a Utah limited liability company,<br><br>    Third-Party Defendants. | |

Defendants Supernova Media, Inc., Joycelyn Engle, Joseph DiPalma, and Julianne Michelle (collectively Supernova Media) move to compel Plaintiff Joseph G. Pia to answer deposition questions.[1] This order grants the motion in part.

Defendant Joycelyn Engle is an officer of Supernova Media, Inc., and through Supernova Media, Inc., is one of two managers of Shannon's Rainbow LLC, a Delaware Limited Liability Company (Shannon's Delaware).[2] The other manager of Shannon's Delaware is SummitWorks, LLC.[3] Joseph DiPalma is a member of Shannon's Delaware.[4] Shannon's Delaware was formed for the sole purpose of producing a film titled *Shannon's Rainbow*.[5]

Supernova Media claims that Pia secretly "caused the formation of a shadow company, [Shannon's Rainbow, LLC, a Utah limited liability company] Shannon's Utah, in an attempt to seize control of the film."[6] Pia also formed another entity, Shannon's Rainbow Production, LLC, a Pennsylvania limited liability company.[7] Supernova Media claims that the assets of Shannon's Delaware were drained into Shannon's Utah, including the copyright for the film and the $2 million invested by investors in Shannon's Delaware.[8] Supernova Media's counterclaim against Pia alleges breach of fiduciary duty, tortious interference with prospective economic advantage,

---

[1] Motion to Compel Full and Complete Deposition Testimony (Motion to Compel) at 2, docket no. 160, filed May 19, 2011.

[2] Amended Answer, Verified Amended Counterclaim and Verified Amended Third-Party Complaint (Counterclaim) at 13, docket no. 30, filed April 27, 2010. Declaration of Joycelyn Engle in Opposition to Motion to Dismiss ¶ 2, docket no. 77, filed October 27, 2010.

[3] Counterclaim ¶ 28.

[4] *Id.* ¶ 30.

[5] *Id.* ¶ 22.

[6] Memorandum in Support of Motion to Compel Full and Complete Deposition Testimony (Supporting Memorandum) at vi, docket no. 161, filed May 19, 2011. Counterclaim at 20.

[7] Memorandum in Opposition to Motion to Compel (Opposing Memorandum) at 7, docket no. 170, filed June 7, 2011.

[8] Supporting Memorandum at vi.

abuse of process, unjust enrichment, conversion, and failure to produce records. The counterclaim also seeks declaratory relief stating that Pia has no lien or other interest in the film, and an award of punitive damages.[9]

Pia claims defamation, libel, invasion of privacy, intentional infliction of emotional distress, intentional interference with economic relations, and civil conspiracy. His amended complaint further alleges that defamatory information has been placed on websites and disseminated through electronic media.[10]

Pia's deposition was taken on April 20, 2011. Supernova Media claims that "Pia refused to answer questions on a broad range of discoverable issues claiming that the subjects were protected either by confidentiality agreements or by the attorney-client privilege."[11]

## Third-Party Confidentiality Agreements

The confidentiality agreements on which Pia based his refusal to answer questions are identified in deposition excerpts provided by Supernova and in Pia's statements: (1) an informal arrangement with the partners at Bennett Tueller Johnson & Deere (BTJD) that allowed Pia means of compensation other than through the BTJD firm;[12] (2) a settlement agreement that contains a confidentiality provision with Shannon's Rainbow Entities and other Shannon's Rainbow Managers;[13] and (3) a confidentiality agreement with Tamara Bell.[14] Pia did not

---

[9] Counterclaim at 23-28.

[10] Amended Complaint, docket no. 97, filed February 25, 2011.

[11] Supporting Memorandum at ii.

[12] *Id.* at xvi.

[13] *Id.* at xvi – xviii.

[14] *Id.* at xviii-xix.

produce any of these confidentially agreements in the deposition or in the briefing of this motion.[15]

To the extent that Pia objects to answering questions based on these confidentiality agreements, the magistrate judge overrules the objection. "[A] general concern for protecting confidentiality does not equate to privilege. Thus information and documents are not shielded from discovery merely because they are confidential. . . .Simply put, litigants may not shield otherwise discoverable information from disclosure to others merely by agreeing to maintain its confidentiality." [16] The magistrate judge therefore orders Pia to answer any deposition questions he previously refused to answer based on confidentiality agreements which he has failed to produce.

Cases Pia cites are consistent with this result. *Dutton v. Todd Shipyards Corp.* holds that confidential settlement agreements are discoverable if a party makes a showing that documents relating to the settlement negotiations are relevant and likely to lead to the discovery of admissible evidence.[17] *Prater v. Commerce Equities Management Co., Inc.* addresses a motion to seal a settlement agreement from the public docket. [18] Neither case immunizes settlements on relevant subjects from discovery.

However, since the information should likely not be made public, the magistrate judge imposes a protective order permitting the parties to prohibit (1) the disclosure of information and documents to non-parties, and (2) the use of such information/documents outside of this lawsuit. This protective order will be effective until the parties agree on a protective order.

---

[15] Opposing Memorandum at 10-14.

[16] *DIRECTV, Inc. v. Puccinelli,* 224 F.R.D. 677, 684-85 (D. Kan. 2004) (citations omitted).

[17] Civil Action No. 09-62916, 2009 U.S. Dist. Lexis 107963, at *2-3 (E.D. Pa. Nov. 17, 2009).

[18] Civil Action No. H-07-2349, 2008 WL 5140045 (S.D. Tex. Dec. 8, 2008).

**Attorney-Client Privilege**

Supernova Media and Pia disagree extensively about Pia's use of the attorney-client privilege to refuse to answer questions.

The parties disagree on Pia's ability to waive or invoke the attorney client privilege in answering questions. Supernova Media argues "Pia cannot assert the privilege against the Defendants because they are current managing members of the Shannon's Rainbow entities."[19] Pia argues that it is "uncertain whether Supernova [Media LLC] has the authority to waive the attorney-client privilege on behalf of the Shannon's Rainbow entities."[20] It is clear that Engle is an officer of Supernova Media, Inc., a manager of Shannon's Delaware. Therefore, Pia cannot assert the attorney-client privilege on behalf of Shannon's Delaware.

Further, the allegations in this case place many transactions within the crime-fraud exception to the attorney-client privilege. "No privilege exists under this [attorney-client privilege] rule . . .[i]f the services of the lawyer were sought or obtained to enable or aid anyone to commit or plan to commit what the client knew or reasonably should have known to be a crime or fraud."[21] "The exception also applies if the lawyer actively participates in the crime or fraud."[22] The allegations of disclosure, conversion of funds and breach of fiduciary duty create a need for full information, which factually supports the use of the exception to invade of the attorney-client privilege. For this reason, Pia cannot invoke the privilege as to the other Shannon's Rainbow Entities in matters relating to the Shannon's Rainbow film, including facts

---

[19] Supporting Memorandum at 9.

[20] Opposing Memorandum at 21.

[21] Utah R. Evid. 504(d)(1).

[22] Restatement (Third) of Law Governing Lawyers § 82 cmt. c (2000).

regarding ownership, finances, tax credits, payment of fees, waivers of conflict of interest, and entity formation and membership.

Also, as Supernova Media states, "Pia may not invoke the attorney-client privilege regarding conversations and information he has put at issue in his claims and defenses."[23] Pia must answer questions posed by Supernova which seek information relevant to any of Pia's tort claims which arise out of relationships with other clients because he placed those relationships at issue. Pia cannot claim damages for harm to his client relationships and then hide the conversations that allegedly evidence this harm. As an example, Supernova Media asked Pia about conversations he had with McKay Daines, who was a client at the time of some of the conversations[24] regarding purported defamatory statements that were made to Mr. Daines.[25] Pia claims he answered the question relating to Mr. Daines and this case, but would not answer questions about discussions with Daines relating to another case and claims that those discussions are irrelevant.[26] If Pia intends to make any claim for statements made to Daines, the discussions with Daines regarding those statements are subject to discovery.

Supernova asked Pia about e-mails between Defendant Jocelyn Engle/Supernova Media and Shannon's Rainbow entities.[27] Pia was copied on those emails.[28] Supernova Media correctly argues that Pia may not object to questions about the information contained in emails simply because he was copied on the emails.

---

[23] Supporting Memorandum at 5.

[24] Opposing Memorandum at 10.

[25] Supporting Memorandum at xiv-xv.

[26] Opposing Memorandum at 18.

[27] Supporting Memorandum at xiii.

[28] *Id.*

Also, questions that concern Pia's custom and practice with his clients generally as well as questions about obtaining a waiver for conflicts[29] related to this case are not privileged. Therefore, Pia must answer them.

## Conversations During Breaks

Supernova Media also claims that "Pia's counsel improperly asserted that [] conversations [between Pia and his counsel had while on breaks during the deposition] were protected by the attorney-client privilege."[30] Supernova Media cites *Hall v. Clifton Precision*,[31] for the proposition that conferences that occur after the deposition has started are fair game for inquiry by the deposing attorney. Pia argues that the approach in *Hall* has been rejected by several other courts. In *McKinley Infuser, Inc. v. Zdeb* the court concluded that "the truth finding function is adequately protected if deponents are prohibited from conferring with their counsel while a question is pending; other consultations, during periodic breaks, luncheon and overnight recesses, and more prolonged recesses ordinarily are appropriate.'"[32] This distinction makes sense. Pia may assert the attorney-client privilege concerning the conversations between Pia and his counsel that occurred while on long breaks while no question was pending, but must answer questions about conversations that occurred during breaks while a question was pending.

---

[29] Supporting Memorandum at x-xii.

[30] Supporting Memorandum at 9.

[31] 150 F.R.D. 525 (E.D. Pa. 1993).

[32] 200 F.R.D. 648, 650 (D. Colo. 2001).

**ORDER**

IT IS HEREBY ORDERED that Supernova Media's Motion to Compel Full and Complete Deposition Testimony[33] is GRANTED IN PART and DENIED IN PART as provided herein. The motion for sanctions is DENIED.

PROTECTIVE ORDER

IT IS FURTHER ORDERED until the parties stipulate to a different form of protective order, any party may designate as CONFIDENTIAL any material which it is required to produce to the other party which the producing party believes is entitled to protection under Rule 26(c), Fed. R. Civ. P. All other parties and counsel shall not disseminate such Confidential Material (which includes material produced and information derived therefrom); shall hold such Confidential Material in confidence; shall use such Confidential Material only for purposes of this civil action and for no other action, and not for any business or other commercial purpose; and shall not disclose it to any other person not entitled to access under this protective order.

In the event a party receiving such Confidential Material shall dispute the designation, that party shall notify the producing party, and the parties shall meet and confer. If they are unable to resolve the dispute within fifteen days of notice, the producing party must file a motion for protective order or the designation and restriction on access to the Confidential Material shall be deemed to be removed.

In the event any party desires to use Confidential Material in court proceedings or filings, the material shall be filed under seal. If a party filing such Confidential Material desires to contest the designation to avoid filing under seal, the party must follow the procedures of the preceding paragraph.

---

[33] Docket no. 160, filed May 19, 2011.

At the conclusion of this action, including through all appeals, any person receiving such records shall destroy or return to the producing party all such Confidential Material received and certify to the other party such destruction or return. Such return or destruction shall not relieve any person from any of the continuing obligation imposed by this order. If a person receiving such Confidential Material is subpoenaed in another action or proceeding or served with a document or testimony demand or a court order, and such subpoena or demand or court order seeks material subject to this order, that party shall give prompt written notice to opposing counsel and allow opposing counsel an opportunity to oppose such subpoena or demand or court order prior to the deadline for complying with the subpoena or demand or court order. No compulsory disclosure to third parties of Confidential Material subject to this order shall be deemed a waiver of any claim of confidentiality, except as expressly found by a court or judicial authority of competent jurisdiction. The court's jurisdiction to enforce this order will continue after the termination of this action.

Dated December 6, 2011.

BY THE COURT:

_____
David Nuffer
U.S. Magistrate Judge